UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY GORDON,

        Petitioner,

                      CASE NO. 06-CV-11882
v.                      HONORABLE NANCY G. EDMUNDS

BARRY DAVIS,

        Respondent.
_____/

**OPINION AND ORDER DISMISSING THE PETITION FOR WRIT OF
HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY
AND LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I. Introduction**

Ricky Gordon ("Petitioner"), a Michigan prisoner, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of assault with intent to rob while armed following a bench trial in the Wayne County Circuit Court in 1992 and was sentenced to life imprisonment. In his pleadings, he raises 11 claims concerning the pre-trial identification procedures, the sufficiency of the evidence, the effectiveness of trial and appellate counsel, the denial of his motion for relief from judgment, his right to testify, and his jury trial waiver.

Respondent has filed an answer to the petition asserting that it should be dismissed as untimely. For the reasons set forth, the Court agrees with Respondent and dismisses the petition for failure to comply with the one-year statute of limitations set forth at 28 U.S.C. § 2244(d).

The Court also denies a certificate of appealability and leave to proceed *in forma pauperis* on appeal.

## II. Facts and Procedural History

Petitioner's conviction arises from the stabbing death of Cavin Odom while he and co-defendants Michael Purifoy and Paul Anderson attempted to rob Odom and his friends, Grover Scott, Zachary Branch, and Anthony Nicholson outside of Scott's grandmother's home in Detroit, Michigan on March 26, 1992.

At trial, Grover Scott testified that he saw Petitioner and Anderson jump out of car as he and his friends were approaching his grandmother's house. He said that Anderson had a knife and robbed him of his coat and money while Petitioner ran to the side of the house. Before Scott ran away, he saw Anderson run toward the side of the house.

Zachary Branch testified that he, Odom, and Nicholson were by the side door of the house when Purifoy and Petitioner approached them. Purifoy had a knife and ordered Odom to give him his coat. When Odom refused, Purifoy stabbed him in the chest. Branch ran away. He was chased by Purifoy while Petitioner shouted, "get him." While fleeing, Branch looked back and saw Anderson leaning over Odom's body.

Anthony Nicholson also testified that two men attempted to rob him, Branch, and Odom, but he could not identify the perpetrators.

Paul Anderson was the only defendant who testified at trial. He claimed that he was with Purifoy and some other people on the night of the incident. They went to the store, drank some beer in a car, and then he went home. Anderson said that he had not seen Petitioner that night. Anderson's police statement, in which he stated that he saw Michael Purifoy stab Cavin Odom,

was admitted into evidence. Police officers provided further testimony about Anderson's statement and their investigation of the crime.

At the close of trial, the court found Petitioner guilty of assault with intent to rob while armed, found Michael Purifoy guilty of felony murder, and found Paul Anderson guilty of armed robbery. The trial court subsequently sentenced Petitioner and Anderson to life imprisonment and sentenced Purifoy to life imprisonment without the possibility of parole.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising claims concerning the pre-trial identification procedures, the sufficiency of the evidence, the effectiveness of trial counsel, and his sentence. He also filed a motion to remand for a *Ginther* hearing on the ineffective assistance of counsel claim. The Michigan Court of Appeals granted the motion to remand on the ineffective assistance of counsel claim, but denied relief on the remaining claims. *People v. Gordon*, No. 160930 (Mich. Ct. App. Nov. 23, 1994) (unpublished). Petitioner filed an application for leave to appeal this decision with the Michigan Supreme Court, which was denied. *People v. Gordon*, 450 Mich. 855, 538 N.W.2d 682 (Aug. 28, 1995).

The trial court conducted the required evidentiary ("*Ginther*") hearing on May 7, 2007. Following that hearing, the trial court denied relief on Petitioner's ineffective assistance of counsel claims. Petitioner attempted to appeal this decision to the Michigan Court of Appeals, but his appeal was "dismissed for failure to pursue the case in conformity with the rules." *People v. Gordon*, No. 207611 (Mich. Ct. App. March 25, 1998) (unpublished). Petitioner did not appeal this decision to the Michigan Supreme Court.

On September 27, 2000, Petitioner filed a motion for relief from judgment with the state trial court raising claims of ineffective assistance of trial and appellate counsel, which was denied pursuant to Michigan Court Rule 6.508(D)(2) and 6.508(D)(3)(a), (b) on February 11, 2004. Petitioner then filed an application for leave to appeal with the Michigan Court of Appeals, which was denied "for failure to meet the burden of establishing entitled to relief under MCR 6.508(D)." *People v. Gordon*, No. 259151 (Mich. Ct. App. Aug. 16, 2005) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Gordon*, 474 Mich. 1020, 708 N.W.2d 389 (Jan. 27. 2006).

Petitioner dated his federal habeas petition on April 6, 2006 and submitted supplement exhibits which were filed by the Court on May 3, 2006. Respondent has since filed an answer to the petition asserting that it should be dismissed for failure to comply with the one-year statute of limitations applicable to federal habeas actions. Petitioner admits that his petition is untimely, but asserts that the one-year period should be equitably tolled.[1]

### III. Discussion

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, became effective on April 24, 1996. The AEDPA governs the filing date for this action because Petitioner filed his petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA establishes a one-year period of limitations for habeas petitions brought by prisoners challenging state court judgments.

---

[1]Petitioner filed a motion for equitable tolling when he filed his habeas petition. The Court denied that motion without prejudice, but will now consider Petitioner's arguments for equitable tolling in resolving this matter.

4

The revised statute provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Petitioner's conviction became final after the AEDPA's April 24, 1996 effective date. The Michigan Court of Appeals dismissed Petitioner's direct appeal (following the remand) on procedural grounds on March 25, 1998. Petitioner then had 56 days to file a delayed application for leave to appeal with the Michigan Supreme Court. *See* Mich. Ct. R. 7.302(C)(3); *Rice v. Trippett*, 63 F. Supp. 2d 784, 787 (E.D. Mich. 1999). He did not do so. Accordingly, his conviction became final, for purposes of § 2244(d)(1)(A), on May 20, 1998 when the time for seeking leave to appeal with the Michigan Supreme Court expired. *See Brown v. McKee*, 232 F.

Supp. 2d 761, 765 (E.D. Mich. 2002).[2] Petitioner was thus required to file his habeas petition on or before May 20, 1999, excluding any time during which a properly filed application for state post-conviction or collateral review was pending in accordance with 28 U.S.C. § 2244(d)(2).

Petitioner, however, did not file his state court motion for relief from judgment until September 27, 2000. Thus, the one-year limitations period had expired well before Petitioner sought state post-conviction review. A state court post-conviction motion that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled. *See Hargrove v. Brigano*, 300 F.3d 717, 718 n. 1 (6th Cir. 2002); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000); *see also Jurado v. Burt*, 337 F.3d 638, 641 (6th Cir. 2003). Petitioner's state post-conviction proceedings did not toll the running of the statute of limitations. Moreover, the AEDPA's limitations period does not begin to run anew after the completion of state post-conviction proceedings. *See Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001).

Petitioner does not assert that his claims are based upon newly-discovered facts or newly-recognized constitutional rights which have been given retroactive effect. Rather, he alleges that the State created an impediment to the filing of his habeas petition because the trial court failed to inform him of his appellate rights following its decision denying him relief on his ineffective assistance of counsel claims after the remand and appellate counsel failed to pursue an appeal.

---

[2]Normally, the one-year statute of limitations does not begin to run until the 90-day time period for filing a petition for writ of certiorari in the United States Supreme Court has expired. *See* Rule 13(1), Supreme Court Rules. Here, however, Petitioner is not entitled to have the 90 days added to the calculation of the limitations period because his failure to file an application for leave to appeal with the Michigan Supreme Court divested the United States Supreme Court of jurisdiction to grant a writ of certiorari.

Petitioner's claim is belied by the record. Petitioner was aware of his appellate rights given that he filed a delayed application for leave to appeal with the Michigan Court of Appeals on November 17, 1997. The court informed him of filing deficiencies and ordered him to correct them. Petitioner apparently did not correct the deficiencies and the appeal was dismissed for failure to pursue the case in conformity with the rules on March 25, 1998. More importantly, any delay in the state courts did not affect Petitioner's ability to timely pursue habeas relief given that the one-year limitations period did not begin to run until the conclusion of Petitioner's direct appeal on May 20, 1998. The alleged failures of the state trial court and/or appellate counsel simply did not impair Petitioner's ability to pursue collateral relief in the state court or habeas relief in federal court in a timely fashion. His habeas action is thus barred by the statute of limitations set forth at 28 U.S.C. § 2244(d).

The United States Court of Appeals for the Sixth Circuit has determined that the one-year limitations period is not a jurisdictional bar and is subject to equitable tolling. In *Dunlap v. United States*, 250 F.3d 1001, 1008-09 (6th Cir. 2001), the Sixth Circuit ruled that the test to determine whether equitable tolling of the habeas limitations period is appropriate is the five-part test set forth in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988). The five parts of this test are:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Dunlap*, 250 F.3d at 1008. A petitioner has the burden of demonstrating that he is entitled to equitable tolling. *See Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). "Typically, equitable tolling applied only when a litigant's failure to meet a legally-mandated deadline unavoidably

arose from circumstances beyond that litigant's control." *Jurado v. Burt*, 337 F.3d at 642 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)).

Petitioner has not set forth sufficient circumstances which caused him to institute his state court collateral proceedings and his federal habeas action well after the expiration of the one-year limitations period. The fact that Petitioner is untrained in the law, was proceeding without a lawyer, or may have been unaware of the statute of limitations for a certain period does not warrant tolling. *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) (ignorance of the law does not justify tolling); *Holloway v. Jones*, 166 F. Supp. 2d 1185, 1189 (E.D. Mich. 2001) (lack of professional legal assistance does not justify tolling); *Sperling v. White*, 30 F. Supp. 2d 1246, 1254 (C.D. Cal. 1998) (citing cases establishing that ignorance of the law, illiteracy, and lack of legal assistance do not justify tolling). Petitioner has also not shown diligence in seeking habeas relief given that he filed his state court motion for relief from judgment more than two years after the completion of his direct appeals. Petitioner is not entitled to equitable tolling under *Dunlap* given such circumstances.

The Sixth Circuit has also held that a credible claim of actual innocence may equitably toll the one-year statute of limitations set forth at 28 U.S.C. § 2244(d)(1). *See Souter v. Jones*, 395 F.3d 577, 588-90 (6th Cir. 2005); *see also Knickerbocker v. Wolfenbarger,* 212 Fed. Appx. 426 (6th Cir. 2007). As explained in *Souter*, to support a claim of actual innocence, a petitioner in a collateral proceeding "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)); *see also House v. Bell*, _

U.S. _, 126 S. Ct. 2064, 2077 (2006) (reiterating that a federal habeas court must consider all the evidence, new and old, exculpatory and inculpatory, in determining an actual innocence exception to a procedural bar). A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. "A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt – or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House*, 126 S. Ct. at 2077. Furthermore, actual innocence means "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. The Sixth Circuit has recognized that the actual innocence exception should "remain rare" and only be applied in the "extraordinary case." *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 321).

Petitioner seeks equitable tolling based upon a claim of actual innocence. As an initial matter, the Court notes that Petitioner's own self-serving assertions of innocence are insufficient to support his actual innocence claim. "A reasonable juror surely could discount [a petitioner's] own testimony in support of his own cause." *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) (citing cases). This is particularly true since Petitioner did not testify at trial. *See Knickerbocker*, 212 Fed. Appx. at 433 (noting that a habeas petitioner's polygraph evidence was not persuasive evidence of actual innocence, in part, because he did not testify at trial).

Petitioner does not rely upon his own assertions. Rather, he presents several affidavits in support of his actual innocence claim. The first is a July, 1993 affidavit from Petitioner's

9

mother, Mattie Lee James, stating that Petitioner was at her home with two other friends (not the co-defendants) until approximately 12:30 a.m. on the night of the robbery and murder. This affidavit is exculpatory evidence as it provides Petitioner with an alibi for the crime. However, a reasonable juror could easily reject James' affidavit since she, as Petitioner's mother, had a significant personal stake in exonerating him. *See McCray*, 499 F.3d at 573. James' affidavit is neither reliable nor persuasive evidence of Petitioner's actual innocence.

Two of the affidavits, dated August 4, 1993, are from co-defendants Paul Anderson and Michael Purifoy. Anderson and Purifoy both state that they were not with Petitioner and not with each other on the night of the robbery and murder. The affidavits are exculpatory in nature. Affidavits from co-defendants, however, are inherently suspect with regard to actual innocence claims. *See Allen v. Yukins*, 366 F.3d 396, 405-06 (6th Cir. 2004); *In re Byrd*, 269 F.3d 561, 574 (6th Cir. 2001). A co-defendant's post-conviction statement which attempts to exculpate a habeas petitioner is unreliable because a convicted co-defendant may try to assume full responsibility for the crime without adverse consequences. *See Allen*, 366 F.3d at 405. In this case, both co-defendants' affidavits attempt to exculpate Petitioner, but they also tend to exculpate themselves since they deny being with each other as well as Petitioner. Such statements are equally unreliable because the co-defendants could sign those affidavits to help Petitioner without endangering their own interests. *Id.* at 405-06. The co-defendants' affidavits are unreliable. Furthermore, the affidavits conflict with the eyewitness testimony presented at trial, particularly that of Grover Scott and Zachary Branch identifying Petitioner and co-defendants as the perpetrators of the crime. Additionally, co-defendant Anderson's affidavit stating that he was not present with either Purifoy or Petitioner on the night of the incident

10

conflicts with his police statement that he saw Purifoy stab Odom and his trial testimony that he was with Purifoy that evening. Affidavits by witnesses recanting their trial testimony are viewed with extreme suspicion. *See McCray*, 499 F.3d at 574; *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001). The co-defendants' affidavits are thus unreliable and not persuasive evidence of Petitioner's actual innocence.

A fourth affidavit, dated July 30, 2004, is from Michael Murdaugh, a fellow inmate who met Petitioner in prison and lived in the same area in Detroit. Murdaugh states that Grover Scott had been accused of killing Odom because Scott's girlfriend was wearing Odom's coat following the murder. Murdaugh also claims that he was picked up by police regarding the murder and saw Scott being interrogated while Anthony Nicholson and Zachary Branch waited. This affidavit does not provide reliable or persuasive evidence of Petitioner's actual innocence. First, Murdaugh did not witness the incident and his affidavit only pertains to what he witnessed at the police station or what he heard from others. *See McCray*, 499 F.3d at 574. Second, to the extent that his statements are hearsay, they are also presumptively less reliable than direct testimony, especially eyewitness testimony. *See Knickerbocker*, 212 Fed. Appx. at 433. Lastly, Murdaugh does not specify who committed the crime, rather he makes statements about people whom he believes were investigated by the police. His statements are unreliable and do not demonstrate Petitioner's actual innocence.

The final affidavit, dated August 22, 2004, is from Kyle Anderson, another fellow inmate. Kyle Anderson states that he typed Mr. Murdaugh's affidavit for him and that Murdaugh told him that Zachary Branch killed Cavin Odom. Kyle Anderson's statements are hearsay, perhaps double hearsay, and are presumptively unreliable. *Id*. Moreover, his affidavit

11

is not consistent with Murdaugh's own affidavit, which does not identify Zachary Branch as the person who killed Odom. Lastly, Kyle Anderson's affidavit conflicts with the trial testimony indicating that Branch and Odom were friends and the eyewitness testimony identifying Petitioner and his co-defendants as the perpetrators of the crime.

Considering Petitioner's arguments and affidavits, as well as the evidence presented at trial, the Court concludes that Petitioner not made a credible showing of actual innocence which would make it more likely than not that any reasonable juror would have a reasonable doubt as to his guilt. He has thus failed to demonstrate that he is entitled to equitable tolling of the one-year period. His petition is time-barred.

### IV. Conclusion

Based on the foregoing analysis, the Court concludes that Petitioner failed to file his habeas petition within the one-year limitations period established by 28 U.S.C. § 2244(d) and that the statute of limitations precludes federal review of the petition. Accordingly, the Court **DISMISSES** the petition for writ of habeas corpus.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court denies a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district

court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). When a plain procedural bar is present and the district court is correct to invoke it to dispose of the matter, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed. In such a case, no appeal is warranted. *Id.*

After conducting the required inquiry and for the reasons stated herein, the Court is satisfied that jurists of reason would not find the Court's procedural ruling debatable. No certificate of appealability is warranted in this case and any appeal would be frivolous. *See* Fed. R. App. P. 24(a). Accordingly, the Court **DENIES** a certificate of appealability and **DENIES** leave to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED**.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: December 7, 2007

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 7, 2007, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager